In re ENVIRODYNE INDUSTRIES, INC., Sandusky Plastics, Inc., Sandusky Plastics of Delaware, Inc., Viskase Corporation, Viskase Holding Corporation, Viskase Sales Corporation, Clear Shield National, Inc., Envirodyne Finance Company, Debtors.

UNION CARBIDE CORPORATION, Claimant,

v.

VISKASE CORPORATION, Objector and Counterclaimant,

v.

UNION CARBIDE CORPORATION, Defendant.

Bankruptcy Nos. 93 B 310, 93 B 312 to 93 B 319. Adv. No. 94 A 01158.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

June 23, 1995.

Alan S. Brilliant, Holleb & Coff, Chicago, IL, for Viskase Corp.

Julian Solotorovsky, Kelley, Drye & Warren, Chicago, IL, for Union Carbide Corp.

## MEMORANDUM OPINION

JOHN D. SCHWARTZ, Chief Judge.

### I. INTRODUCTION

The matter before the court is the motion of Union Carbide Corporation ("Carbide") for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure as incorporated into the Federal Rules of Bankruptcy Procedure by Rule 7012 and for payment of allowed claims.[1] For the reasons set forth below, the court denies Carbide's motion for judgment on the pleadings, and grants in part and denies in part Carbide's motion for payment.

### II. JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), and (O).

### III. BACKGROUND

After the commencement of an involuntary petition on January 6, 1993 against Envirodyne Industries, Inc. ("Envirodyne"), on January 7, 1993, certain of Envirodyne's subsidiaries (collectively "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code and Envirodyne consented to the entry of an order for relief in the involuntary case. *In re Envirodyne Indus., Inc.,* 1993 WL 566565 at *1 (Bankr.N.D.Ill. Dec. 20, 1993) (Findings of Fact and Conclusions of Law). The Debtors' cases have been jointly administered pursuant to FED.R.BANKR.P. 1015(b) and by order of this court. *Id.*

Viskase Corporation ("Viskase") is a subsidiary of Envirodyne. In its filings, Viskase scheduled Carbide[2] as having an unsecured, undisputed, liquidated, and non-contingent claim totalling $494,421.95.[3] On May 10, 1993, Carbide filed an amended proof of claim ("Claim No. 598") totalling $849,898.95, which represents the amounts due Carbide for goods, wares, and merchandise sold and delivered to Viskase on open account. Pur-

---

1. Viskase has also filed a "Motion to Strike Certain Portions of Union Carbide Corporation's Reply Brief, or, in the Alternative, to Schedule Oral Argument." The court denies this motion. First, the portions sought to be stricken relate to matters upon which the court has ruled in favor of Viskase and the motion is therefore moot based on the court's disposition of Carbide's motion. Second, the court finds there is little or no merit to the allegations contained in Viskase's motion to strike. Accordingly, no discussion of the motion to strike is necessary and that motion is denied. Carbide's alternative motion for oral argument is also denied for similar reasons.

2. Union Carbide Corporation merged into Union Carbide Chemicals and Plastics Company, Inc. in 1994. The latter filed Claim No. 598. As a result of the merger, the new entity, Union Carbide Corporation, is deemed to be the holder of Claim No. 598.

3. This amount is comprised of several individually noted unsecured obligations of Viskase's to entities related to or subsidiaries of Carbide. Both parties have treated these individual obligations as one claim and for purposes of this opinion, the court will do so as well.

suant to 11 U.S.C. § 546(c), Carbide has claimed that $293,562.90 is subject to a lien, or, in the alternative, an administrative expense priority, as a result of Carbide's reclamation demand. If Carbide is correct, the balance, $556,336.05, would then represent a pre-petition unsecured claim.

On December 17, 1993, this court entered an order confirming the Debtors' "First Amended Plan of Reorganization as Twice Modified" ("Plan"). *In re Envirodyne Indus., Inc.,* 1993 WL 566566 (Bankr.N.D.Ill. Dec. 13, 1993) (Memorandum Opinion). Pursuant to the Plan, a date was set as a claims objection bar date. Plan at § 1.42. All administrative and general unsecured claims against Viskase that are Allowed Claims are entitled to payment in full in cash on the later of the effective date of the Plan or the date on which the claim is an Allowed Claim. *Id.* at § 4.04. No distinction is made between these two classes of claims, as each is paid in full.

On June 28, 1994, Viskase timely filed an adversary complaint wherein Viskase objects to Claim No. 598, asserts a counterclaim against Carbide, and requests set-off.[4] Viskase did not list or disclose the counterclaim against Carbide in its petition for relief, in its schedule of assets (11 U.S.C. § 521(1)), in its disclosure statement (11 U.S.C. § 1125), or in its Plan. Viskase's objection does not challenge the amount of Claim No. 598. Rather, Viskase, while admitting the amounts set forth in Claim No. 598, asserts that Carbide owes Viskase approximately $820,000 and seeks to offset this amount owed to it against the amount it owes Carbide.[5]

The basis for the counterclaim arises out of the 1986 agreement between Carbide and Viskase ("Sales Agreement")[6] for the sale of certain Carbide assets to Viskase. Among the assets sold was a plant in Osceola, Arkansas ("Osceola Plant"). According to the complaint, Carbide caused and was responsible for the release of hazardous substances contaminating the soil and the groundwater at the Osceola Plant prior to the 1986 sale. Viskase contends that it has incurred expenses in investigating and correcting the environmental damage caused by Carbide at the Osceola Plant. Viskase completed the investigation and the cleanup in 1992 pursuant to a consent decree entered into between Viskase and the State of Arkansas. Viskase asserts that Carbide owes Viskase reimbursement for the cleanup expenditures under two theories: (1) CERCLA[7]; and (2) an indemnity clause contained in the Sales Agreement. Viskase seeks to set-off the amounts it is entitled to be reimbursed by Carbide against Carbide's Claim No. 598. Viskase also seeks to set-off whatever amount of money that Carbide may be required to pay upon the conclusion of the now-pending litigation in the Ontario Court of Justice ("Canadian Litigation").[8]

## IV. ISSUES

The following are the issues before the court:

(1) Whether the timely assertion of a counterclaim or set-off is a sufficient "objection" to preclude the payment of an allowed claim under a confirmed plan;

(2) Whether a debtor's failure to list or disclose a claim against a creditor in its

---

4. Viskase objected to Carbide's claim on the basis of set-off. Whether or not the counterclaim and request for set-off constitute an "objection" is the subject of considerable disagreement. The court resolves the issue in Part V, Subpart B.

5. Essentially, Viskase seeks to "strike a balance," in that if Viskase is successful in its motion, then the competing amounts would virtually cancel or nullify one another.

6. The Sales Agreement was dated January 31, 1986. By its caption, Union Carbide Corporation, Union Carbide Canada, Ltd, and Union Carbide Films Packaging, Inc. were the sellers,

while Viskase and its affiliates were the buyers. Envirodyne was listed as a shareholder.

7. CERCLA is the acronym for the federal environmental legislation otherwise known as the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by, *inter alia,* the Superfund Amendments and Reauthorization Act of 1986. *See* 42 U.S.C §§ 9601–9675.

8. The Canadian Litigation relates to environmental pollution problems at a plant in Canada which Carbide sold to Viskase under the Sales Agreement.

schedule of assets, its disclosure statement, or its plan equitably estops the debtor from asserting that cause of action post-confirmation where the creditor in question was unimpaired under the plan and the debtor knew, and the creditor may well have known, the relevant facts prior to confirmation;

(3) Whether a debtor's failure to list or disclose a claim against a creditor in its schedule of assets, its disclosure statement, or its plan judicially estops the debtor from asserting that cause of action post-confirmation where the creditor in question was unimpaired under the plan and the debtor knew, and the creditor may well have known, the relevant facts prior to confirmation; and

(4) Whether a debtor is unable, by reason of state law, to assert a set-off against a creditor's claim where the party seeks to offset an unadjudicated counterclaim as well as the results of unadjudicated foreign litigation.

## V. ANALYSIS

### A. Standards for Judgment on the Pleadings [9]

A motion for judgment on the pleadings pursuant to Rule 12(c) "is subject to the same standard as a motion to dismiss under Rule 12." *Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir.1993); *United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir.1991) (per curiam). "Accordingly, the motion should not be granted unless it appears beyond doubt that the [non-movant] cannot prove any facts that would support his claim for relief." *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir.1989); *Craigs*, 12 F.3d at 688 (quoting *Thomason*). In other words, the motion "may be granted only if the moving party clearly establishes that no material issue of fact remains to be resolved and that he or she is entitled to judgment as a matter of law." *National*

*Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir.1987). In considering such a motion, the court is limited to consideration of only those matters presented in the pleadings. *Id.* Moreover, the court "must view the facts in the light most favorable to the nonmoving party." *Id.; Wood*, 925 F.2d at 1581 ("all uncontested allegations to which the parties had an opportunity to respond are taken as true"); *Thomason*, 888 F.2d at 1204 (citing *National Fidelity*). However, the court is not bound by the non-movant's legal characterization of the facts. *National Fidelity*, 811 F.2d at 358.

### B. Objections to Proof of Claim

Carbide asserts that it is entitled to immediate payment of the sum of $849,898.95, which represents (a) $494,421.95 scheduled as undisputed; (b) $293,562.90 claimed as a reclamation, or, in the alternative, an administrative, expense; and (c) $61,914.10, which is the difference between the unsecured claim as claimed by Carbide and as scheduled by Viskase. Carbide asserts that the sum of $61,914.10 is a Contested Claim to which no timely objection was filed because Viskase did not make a proper "objection" to Claim No. 598.

On the other hand, Viskase contends that it did file a proper "objection" to Claim No. 598 in the form of the adversary complaint wherein Viskase asserts a counterclaim and a request for set-off. Viskase acknowledges that it is not challenging or disputing the total amount of Claim No. 598. *See Viskase Corporation's Response Brief* at 19. Instead, Viskase maintains that set-off and counterclaim are defenses to claims and properly serve as grounds for an "objection" to a claim. Viskase concludes that because it timely filed a proper objection to Claim No. 598, Claim No. 598 is not an Allowed Claim under the Plan that is entitled to immediate payment in full in cash.

---

**9.** Federal Rule of Civil Procedure 12(c), as incorporated in Rule 7012 of the Federal Rules of Bankruptcy Procedure, provides:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not

excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

FED.R.CIV.P. 12(c); FED.R.BANKR.P. 7012.

■ The court agrees with each side to a limited extent. When reviewing objections to claims made after confirmation of a plan, the court should first look to the plan as the document which binds the parties much like a contract.[10] Under the Debtors' Plan, administrative and general unsecured claims against Viskase which are Allowed Claims are to be paid in full in cash on the later of the effective date of the Plan or the date on which the claim becomes an Allowed Claim. Plan at §§ 2.01, 4.04. A claim, or a part thereof, is an Allowed Claim "(a) to the extent it is not a Contested Claim; or (b) [if it is] a Contested Claim, proof of which was filed with the Bankruptcy Court, and ... (ii) as to which an objection was filed by the Objection Deadline to the extent allowed by a Final Order." *Id.* at § 1.02. It therefore becomes important whether a claim or a part thereof is a Contested Claim under the Plan.

The definition of what constitutes a Contested Claim is set forth in section 1.18 of the Plan. Where a claim is listed in the schedule of liabilities as undisputed, liquidated, and not contingent, and a proof of claim has been filed as to that claim, the claim is a Contested Claim, *but only to the extent the amount set forth in the proof of claim exceeds the amount scheduled. Id.* at § 1.18(b).[11] The result, under the terms of the Plan, is that the amount scheduled as owed to the claimant is not a Contested Claim, and, to that extent, it is an Allowed Claim. *Id.* at §§ 1.18(b) and 1.02(a). The excess amount or balance is a Contested Claim which, if a timely objection is filed, cannot become an Allowed Claim until the court rules on the objection or it is abandoned. *Id.* at §§ 1.18(b) and 1.02(b).[12]

It is undisputed that in Viskase's schedule of liabilities, Viskase listed Carbide's claim in the amount of $494,421.95 as undisputed, liquidated, and non-contingent, that Carbide filed Claim No. 598 in the amount of $849,-898.95, and that the amount set forth in the proof of claim, $849,898.95, exceeds the amount set forth in Viskase's schedule of liabilities, $494,421.95. It is also undisputed that Claim No. 598 consists of unsecured and administrative claims. The issue, therefore, is whether Claim No. 598 or any part thereof is an Allowed Claim under the Plan, which in turn requires a determination of whether it or any part thereof is a Contested Claim.

■ Pursuant to § 1.18(b) of the Plan,[13] $494,421.95 of Carbide's Claim No. 598 constitutes an Allowed Claim, not a Contested Claim, because that is the amount listed as undisputed, liquidated, and not contingent in Viskase's schedule of liabilities, and Carbide did file a proof of claim that exceeds the amount listed. *See id.* at §§ 1.02(a) and 1.18(b). Therefore, $494,421.95, as the scheduled amount, is an Allowed Claim, and, according to the terms of the Plan, it is to be paid now. *Id.* at §§ 2.01, 3.11, and 4.04. As an Allowed Claim under the Plan, that amount is not subject to the objection and Viskase is obligated to pay that amount. *See id.* at § 4.04. Accordingly, the court will grant Carbide's motion for payment in part, that is, to the extent of $494,421.95, which represents the portion of Claim No. 598 that is an Allowed Claim under the Plan.

Viskase has agreed, through the Plan, to pay general unsecured and administrative claims in full to the extent such claims are Allowed Claims and not Contested Claims. *Id.* at §§ 1.02(a), 1.18(b), and 4.04. By definition, to the extent a claim or a part thereof

---

**10.** The Debtors' Plan has been confirmed. *See In re Envirodyne Indus., Inc.,* 1993 WL 566566 (Bankr.N.D.Ill. Dec. 13, 1993) (Memorandum Opinion).

**11.** § 1.18(b) of the Plan provides:

*Contested,* when used with respect to a Claim, means a Claim against the Debtors ... (b) that is listed in the Debtors' Schedules as undisputed, liquidated, and not contingent and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent the proof of claim exceeds the scheduled amount; ....

Plan at § 1.18(b). This section is applicable here. First, the individual claims that comprise Carbide's total claim against Viskase are listed in Viskase's schedule of liabilities as undisputed, liquidated, and not contingent. Second, Carbide did file a proof of claim as to that scheduled claim. *See* Claim No. 598. Finally, the proof of claim exceeds the scheduled amount.

**12.** Of course, to the extent the court sustains the objection, the claim is disallowed.

**13.** This section applies for the reasons set forth above. *See* note 11 *supra.*

is an Allowed Claim under the Plan and not a Contested Claim, that claim or part thereof is not subject to objection by Viskase. *Id.* at §§ 1.02(a) and 1.18(b). The Plan controls the impact and effect of objections. Under the Plan, once an unsecured or administrative claim or any part thereof is an Allowed Claim, it is due in full. *Id.* at §§ 1.02(a), 1.18(b), and 4.04. In contrast, an unsecured or administrative claim or any part thereof that is a Contested Claim pursuant to section 1.18, with one exception not here relevant,[14] will only become an Allowed Claim if a timely objection is filed and then only to the extent allowed by a final order of this court. *Id.* at § 1.02(b)(ii). Objections, therefore, have no effect, impact, or bearing on claims or portions of claims that are Allowed Claims under the terms of the confirmed Plan. On the other hand, objections apply to, and may be considered against, those claims or portions thereof that are not Allowed Claims, and are deemed Contested Claims, under the Plan.

Under the terms of the Plan, the balance of Claim No. 598 or the excess amount of $355,477 constitutes a Contested Claim. *See id.* at § 1.18(b). This amount represents the difference between Claim No. 598 as filed, $849,898.95, and the scheduled amount of $494,421.95. Pursuant to the Plan, that excess portion, $355,477, is a Contested Claim and thus not an Allowed Claim. *Id.* at §§ 1.18(b) and 1.02. At the time of confirmation of the Plan, pursuant to § 1.18(b), no objection need be filed in order for a portion of a claim to be a Contested Claim (*id.* at § 1.18(b)), provided that it would become an Allowed Claim if no objection was filed within the objection deadline (*id.* at § 1.02(b)(ii)).

The parties have argued over whether the counterclaim can serve as an "objection." For the reasons set forth below, the Court agrees with Viskase that Viskase timely filed an "objection" to Claim No. 598. However, that "objection" is only applicable to that portion of Claim No. 598, $355,477, that exceeds the Allowed Claim. Accordingly, the court will deny Carbide's motion for payment as to the balance of the claim, to wit, $355,477. That amount is not now due and will await a final order on the objection. *See id.* at §§ 1.18(b) and 1.02(b)(ii).[15]

A counterclaim can serve as a proper objection to a creditor's claim. *Citicorp North America, Inc. v. Finley (In re Washington Mfg. Co.)*, 128 B.R. 198, 201 (Bankr. M.D.Tenn.1991). A counterclaim that serves as the basis of an objection to a claim is "an integral part of the claims allowance process in ... bankruptcy.... The mere fact that claims allowance is being conducted in the form of adversary proceedings rather than by motion does not change that conclusion." *Id.*

Set-off can also serve as a proper basis for an objection and a proper ground for disallowance of a claim. *In re Bicoastal Corp.*, 158 B.R. 240, 246 (Bankr.M.D.Fla. 1993). In *Bicoastal*, the debtor objected to a creditor's proof of claim by substantively disputing each component of the claim and by asserting that the creditor owed the debtor an amount substantially in excess of the creditor's claim that was subject to set-off. *Id.* at 242–43. The court disallowed certain portions of the claim for various reasons and allowed the remaining claims subject to the

---

**14.** Where a proof of claim has been filed as to a Contested Claim and a timely objection thereto has not been filed, that proof of claim is an Allowed Claim, except if that claim "is to be determined in a forum other than the Bankruptcy Court, in which case such Claim shall not become allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court...." Plan at § 1.02(b)(i). This section does not apply because, as will be seen, Viskase did timely file an objection to Carbide's Claim No. 598.

**15.** In addition, this is not the proper procedural posture for the court to determine the existence or extent of Carbide's alleged lien or administrative expense priority. The matter before the court is a motion for judgment on the pleadings and a motion for payment. Neither of these motions require the court to characterize the claim in order to decide the motions. As, the characterization issue is not before the court, it will not be discussed. The court has only determined that $355,477 is not now due. That amount may or may not be subject to set-off by virtue of Viskase's counterclaim, but that will not be known until the completion of future proceedings.

debtor's right to set-off. *Id.* at 243–44. The court then determined that the creditor did owe the debtor an amount greater than the creditor's claim. *Id.* at 246. Ultimately, the court disallowed those portions of the claim not disallowed on other grounds on the ground of the set-off. *Id.*

▮▮▮ Furthermore, the word "objection" is not defined in the Bankruptcy Code or in the Federal Rules of Bankruptcy Procedure. In the absence of statutory guidance, the Plan will govern. Unless the meaning, form, or scope of the term "objection" is defined, restricted, or limited in some way by the terms of the Plan itself, the court must apply the general and ordinary meaning ascribed to that term. *In re Outdoor Sports Headquarters, Inc.,* 168 B.R. 177, 183 (Bankr.S.D.Ohio 1994). The Plan does not define, restrict, or limit the meaning, form, or scope of the term "objection." An "objection," in ordinary usage, refers to " 'any adverse reason raised to oppose a matter or proceeding.' " *Id.* (quoting BLACK'S LAW DICTIONARY 967–68 (5th ed. 1979)). Viskase's counterclaim and set-off have been raised to oppose the allowance and payment of Claim No. 598, and, as such, constitute an "objection" in the ordinary sense of the word. Therefore, because (a) a counterclaim is a proper objection to a claim, (b) set-off is a proper basis for disallowance of a claim, and (c) the set-off and counterclaim constitute an "objection" to Claim No. 598, the court concludes that Claim No. 598 will not be allowed at this juncture to the extent of the difference between the claim as scheduled and the claim as filed, pending resolution of Viskase's objection.[16]

### C. Equitable Estoppel

▮▮▮ Carbide, relying primarily on *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (3d Cir.), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988), asserts that Viskase should be equitably estopped from bringing its counterclaim against Carbide. In support of its assertion, Carbide maintains that (a) Viskase knew all the material facts underlying the counterclaim prior to the commencement of Debtors' bankruptcy case; (b) Viskase failed to comply with its statutory duty to list the potential cause of action on its schedule of assets in violation of 11 U.S.C. § 521 and FED. R.BANKR.P. 1007; (c) Viskase failed to include the potential cause of action in its disclosure statement in violation of 11 U.S.C. § 1125; (d) Viskase failed to disclose the potential cause of action in its petitions or other filings; and (e) Carbide relied on the schedule of assets as well as the disclosure statement and other filings.

Viskase maintains that the grounds for the imposition of equitable estoppel are not present in this matter. Viskase asserts that (a) the counterclaim is relatively small in size; (b) Carbide had notice of Viskase's claim against Carbide, even if that notice was not formal; (c) Carbide is not injured by the lack of formal notice; (d) Viskase could not have reorganized as quickly as it did if it were forced to investigate and analyze every potential cause of action prior to confirmation; and (e) Carbide did not rely on the schedule of assets, the disclosure statement, or the Plan as a statement that Viskase did not have a cause of action against Carbide, because Carbide was unimpaired under the Plan, thus precluding any decision or vote by Carbide in reliance on those documents. Although the court does not find all of Viskase's arguments persuasive, the court nevertheless agrees that, under the facts before the court, Viskase is not equitably estopped from bringing its counterclaim and set-off, despite the lack of disclosure, because Carbide did not rely on the disclosure or lack thereof.

The Seventh Circuit has indicated that application of the doctrine of equitable estoppel is particularly appropriate in bankruptcy proceedings. *Citation Cycle Co., Inc. v. Yorke,* 693 F.2d 691, 695 (7th Cir.1982). "The reasons for the general application of estoppel are simple enough—the doctrine prevents a party from benefitting from its own misrepresentations." *Black v. TIC Inv. Corp.,* 900

---

16. Because the counterclaim serves as a proper "objection" to Carbide's claim to the extent of the balance of $355,477, this is the result mandated by the Plan. *See* Plan at §§ 1.02(b)(ii) and 1.18(b).

F.2d 112, 115 (7th Cir.1990). Equitable estoppel is appropriate where "one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation." *Id.; Citation Cycle,* 693 F.2d at 695.

The traditional elements of equitable estoppel are: (1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel. The burden of proof is on the party claiming estoppel.

*Kennedy v. United States,* 965 F.2d 413, 417 (7th Cir.1992) (citations omitted).

 There is ample authority to support the application of the doctrine of equitable estoppel where a debtor fails to disclose a known cause of action[17] and later tries to assert that cause of action against a creditor post-confirmation.[18] In the seminal case of *Oneida,* the Third Circuit applied the doctrine of equitable estoppel to bar a former chapter 11 debtor from pursuing a cause of action for lender liability post-confirmation. *Oneida,* 848 F.2d 414. The debtor and the creditor had reached a settlement approved by the bankruptcy court regarding various issues, including the validity and extent of the creditor's lien. *Id.* at 415. In addition, the loan agreements relied on in the lender liability action had been the subject of two contested matters prior to confirmation, thus presenting the debtor with multiple opportunities for disclosure. *Id.* at 418–19. The debtor did not disclose its lender liability cause of action in the schedules, the disclo-

sure statement, or the plan, and it was not referred to in the confirmation order, despite the debtor's knowledge of the relevant facts. *Id.* at 416–18. The court relied on two Bankruptcy Code sections as indications of a debtor's statutory duty to disclose possible litigation or causes of action: the duty to file a schedule of assets and liabilities contained in § 521 and the duty to provide "adequate information" in a disclosure statement pursuant to § 1125. *Id.* at 417.

According to the court in *Oneida,* based on the statutory duties and a general equitable or fiduciary duty of disclosure, a debtor has an

express obligation of candid disclosure. The preparing and filing of a disclosure statement is a critical step in the reorganization of a Chapter 11 debtor.

\* \* \* \* \* \*

The importance of full disclosure is underlaid by the *reliance* placed upon the disclosure statement by the creditors and the court. Given this reliance we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of "adequate information."

*Id.* (emphasis supplied). The court relied on *Monroe County* for the proposition that, among other things, a debtor must disclose any litigation likely to arise in a non-bankruptcy setting. *Id.* The court imposed equitable estoppel because, *inter alia,* the creditor's decisions regarding the stipulations to its lien, the settlement, and its favorable vote on the debtor's plan would have been impacted and likely altered had the creditor known,

---

17. By "known cause of action," the court is referring to a situation where the debtor knows "of all of the facts that were pertinent to its current lawsuit when it filed bankruptcy ... [and no] new information was acquired post-filing...." or where the "facts underlying the cause of action were known to Debtor ... before the plan was confirmed." *Hoffman v. First Nat'l Bank of Akron (In re Hoffman),* 99 B.R. 929, 933 (N.D.Iowa 1989). That is, the debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information (i.e. the material facts) prior to confirmation to suggest that it may have a possible cause of action, then that is a "known" cause of action such that it must be disclosed. *See Hay v. First Interstate Bank of Kalispell,* 978 F.2d 555,

557 (9th Cir.1992); *Heritage Hotel Partnership I v. Valley Bank of Nevada (In re Heritage Hotel Partnership I),* 160 B.R. 374, 378–79 (9th Cir. BAP 1993).

18. *See, e.g., Hay v. First Interstate Bank of Kalispell,* 978 F.2d 555 (9th Cir.1992); *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (3d Cir.), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988); *Hoffman v. First Nat'l Bank of Akron (In re Hoffman),* 99 B.R. 929 (N.D.Iowa 1989); *Monroe County Oil Co., Inc. v. Amoco Oil Co.,* 75 B.R. 158 (S.D.Ind.1987); *Heritage Hotel Partnership I v. Valley Bank of Nevada (In re Heritage Hotel Partnership I),* 160 B.R. 374, 378–79 (9th Cir. BAP 1993).

through the debtor's disclosure, that the debtor intended to sue the bank. *Id.* at 417–18. The court was also concerned with the finality of a confirmed plan and the accompanying confirmation order. *Id.* The court indicated that

> [i]n such circumstances, employment of equitable estoppel is required to preserve the integrity of the earlier proceedings, particularly where . . . the creditors have reasonably acted in reliance upon the assumed finality and integrity of those adjudications.

*Id.* at 418. Although there is much merit to the decision in *Oneida,* this court finds that decision factually distinguishable, and thus the court declines to follow *Oneida* in the factual context of this matter. Consequently, the court concludes that Viskase is not equitably estopped from asserting its counterclaim.

The most significant distinction is that the reliance that was present in *Oneida* is not present here. One of the fundamental elements of the doctrine of equitable estoppel is reliance. *See Kennedy,* 965 F.2d at 418. That reliance must be both actual and reasonable. *Jennings Water, Inc. v. City of North Vernon,* 895 F.2d 311, 316 (7th Cir. 1989). Such reliance was present in *Oneida.* In that case, the debtor, in obtaining the bank's vote in favor of the plan, had conducted negotiations and entered into a stipulation prior to confirmation of the plan. Then, with confirmation complete, the debtor sued that same bank on theories of lender liability. Prior to confirmation, the bank relied on the finality and integrity of the confirmation order and the disclosure statements, which did not disclose any cause of action against the bank, in entering the stipulation and voting in favor of the plan. *Oneida,* 848 F.2d at 418.

However, unlike in *Oneida,* the requisite reliance is not present here, as Carbide did not engage in negotiations with Viskase with a view toward a settlement and Carbide and Viskase did not agree to a stipulation or settlement agreement prior to and in order to secure Carbide's favorable vote. Because Carbide's claim was classified in Class 9C with the general unsecured claims of Envirodyne's subsidiaries, its claim is to be paid in full in cash unless otherwise agreed. Plan at §§ 3.11 and 4.04. Carbide was not entitled to vote on the Plan because its claim is not impaired under the Plan. *See* 11 U.S.C. §§ 1124 and 1126(f). The court finds that Carbide did not actually rely on the accuracy of or the absence of disclosure in the schedules, the disclosure statement, or the Plan because there was no settlement negotiations or agreement and Carbide could not vote on the Plan. Therefore, *Oneida* is distinguishable from the matter before the court.[19]

The facts in this matter are distinguishable from those in *Oneida* for a second reason. In *Oneida,* the theories of lender liability presented issues of fact similar and common to the subject matter of the settlement, as the extent and validity of the liens, like the lender liability issues, arose from the loan agreement. *Oneida,* 848 F.2d at 419. Moreover, the debtor had several opportunities to disclose the cause of action in the form of pre-confirmation court proceedings relating to the loan agreements, yet the debtor failed to take advantage of those opportunities.

However, unlike in *Oneida,* there is no such close connection between Carbide's Claim No. 598 and Viskase's counterclaim and request for set-off. Claim No. 598 essentially derives from unpaid goods and other merchandise that Carbide sold and delivered to Viskase on open account. In con-

---

**19.** Other cases may also be distinguished based on the reliance involved where there is a pre-confirmation settlement and stipulation between the debtor and a creditor, yet the debtor asserts an undisclosed cause of action against that creditor post-confirmation. *See, e.g., Hoffman,* 99 B.R. at 932–36; *Heritage Hotel,* 160 B.R. at 378–79; *Ohio v. H.R.P. Auto Center, Inc. (In re H.R.P. Auto Center, Inc.),* 130 B.R. 247, 254 (Bankr. N.D.Ohio 1991). Furthermore, the decision in *Monroe County* is distinguishable to the extent that the opinion lacks a discussion of the requisite element of reliance. While this court agrees that § 1125 requires a debtor to disclose a known cause of action, it is also true that reliance must be demonstrated in order to apply the doctrine of equitable estoppel. It is unclear whether reliance existed in *Monroe County;* thus, to the extent that there was not reliance, this court declines to follow *Monroe County.* The same can be said of *Hay v. First Interstate Bank of Kalispell,* 978 F.2d 555, 557 (9th Cir.1992).

trast, the counterclaim is for reimbursement of costs expended regarding environmental pollution at two plants Carbide sold to Viskase, and it derives from two sources: (1) the Sales Agreement; and (2) CERCLA. There really are no issues of fact common to both. Moreover, neither Carbide's Claim No. 598 nor Viskase's counterclaim has been previously litigated extensively before this court. Thus, this matter is distinguishable on its facts from *Oneida*. The court concludes that, because Carbide did not rely on disclosure or the absence of disclosure, Viskase is not equitably estopped from asserting its counterclaim and set-off.

### D. Judicial Estoppel

 Carbide asserts that Viskase is barred from pursuing its counterclaim on the basis of the doctrine of judicial estoppel. "Judicial estoppel is a doctrine intended to prevent perversion of the judicial process." *In re Cassidy*, 892 F.2d 637, 641 (7th Cir.), *cert. denied sub nom. Cassidy v. Commissioner of Internal Revenue*, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990). It applies to prevent a party that has taken one position in an earlier legal proceeding from maintaining a position inconsistent with the prior position in a subsequent legal proceeding. *Id.; accord Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir.1993); *Kale v. Obuchowski*, 985 F.2d 360, 361 (7th Cir. 1993); *Oneida*, 848 F.2d at 419. *See also Witham v. Whiting Corp.*, 975 F.2d 1342, 1345 (7th Cir.1992) (a winning party cannot be allowed "to win twice on the basis of incompatible positions") (footnote omitted); *accord Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1548 (7th Cir.1990).

 There is no hard and fast or ready formula for determining the proper circumstances under which judicial estoppel

is to be applied. *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 505, 121 L.Ed.2d 441 (1992); *Cassidy*, 892 F.2d at 641. However, the Seventh Circuit has set forth some boundaries or limits for the application of judicial estoppel.

First, the later position must be clearly inconsistent with the earlier position. Also, the facts at issue should be the same in both cases. Finally, the party to be estopped must have convinced the first court to adopt its position; a litigant is not forever bound to a losing argument.

*Levinson*, 969 F.2d at 264–65 (citations omitted). In addition, the subsequent position must be intentionally inconsistent with the prior position. *Cassidy*, 892 F.2d at 641. The grounds supporting invocation of judicial estoppel have been characterized "in terms redolent of intentional wrongdoing." *Chaveriat*, 11 F.3d at 1428.[20] However, although judicial estoppel "is to be applied where '*intentional self-contradiction* is being used as a means of obtaining unfair advantage,'" it should not be applied "where it would work an injustice, such as where the former position was the product of inadvertence or mistake...." *Cassidy*, 892 F.2d at 641–42 (quoting *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir.1953)) (all other citations omitted) (emphasis supplied).

 Although related to equitable estoppel, judicial estoppel is a separate and distinct doctrine. *Cassidy*, 892 F.2d at 641 and n. 2; *Oneida*, 848 F.2d at 419. In contrast to equitable estoppel, prejudice to the other party as a result of the inconsistent change in position is not a necessary element of judicial estoppel. *Cassidy*, 892 F.2d at 641 n. 2. Moreover, judicial "estoppel is intended to protect the courts rather than the litigants...." *Id.* at 641. In other words,

---

**20.** Other courts have found that intentional misconduct is a necessary element to the application of judicial estoppel. *See, e.g., United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir.1993) (per curiam), *cert. denied*, —— U.S. ——, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994); *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1261 (11th Cir. 1988); *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir.1987); *Total Petroleum, Inc. v. Davis*, 822 F.2d 734, 737 n. 6

(8th Cir.1987); *Reciprocal Merchandising Servs., Inc. v. All Advertising Assocs., Inc.*, 163 B.R. 689, 696–97 n. 11 (S.D.N.Y.1994). *Cf. United Mine Workers of America 1974 Pension v. Pittston Co.*, 984 F.2d 469, 477–78 (D.C.Cir.) (although rejecting the doctrine of judicial estoppel, indicating that the doctrine does require deliberate or intentional inconsistency), *cert. denied*, —— U.S. —— ——, 113 S.Ct. 3039–40, 125 L.Ed.2d 726 (1993).

whereas equitable estoppel focuses on the relationship between the parties, judicial estoppel focuses on "the connection between the litigant and the judicial system...." *Oneida*, 848 F.2d at 419. In addition, judicial estoppel "may be used where collateral estoppel and equitable estoppel fail to protect the interests the rule is intended to serve." *Cassidy*, 892 F.2d at 641.

■■■ Like other varieties of estoppel, judicial estoppel "does not eliminate a claim or defense, but only prohibits a particular party from asserting it." *Id.* at 642. As an equitable concept, judicial estoppel is within the sound discretion of the court. *Id.* The court is mindful that "[j]udicial estoppel is strong medicine" because of its potentially harsh effects. *Chaveriat*, 11 F.3d at 1428. Accordingly, the court will employ the doctrine of judicial estoppel with caution.

The doctrine of judicial estoppel has been applied to prevent a debtor from pursuing a cause of action post-confirmation where the debtor failed to disclose the cause of action in the schedules, disclosure statement, or plan.[21] Carbide, relying on *Payless* and *Louden*, contends that Viskase has adopted or taken inconsistent positions in two respects by asserting its counterclaim against Carbide post-confirmation, and thus should be judicially estopped from asserting that counterclaim. First, Carbide argues that, by not disclosing the counterclaim and instead remaining silent in violation of its statutory duty of disclosure, Viskase took the position that it did not have such a cause of action. Thus, Carbide reasons, the present assertion of the counterclaim is inconsistent with that prior position, and Viskase should be judicially estopped from proceeding with the counterclaim. Second, Carbide argues that, by scheduling Carbide's unsecured claims as undisputed, liquidated, and not contingent, Viskase took the position that such claims are undisputed, liquidated, and not contingent. Carbide then reasons that, by filing the counterclaim in objection to those claims, Viskase is disputing the claims, which is inconsistent

with the position allegedly adopted through the schedules.

Viskase responds that it did not abuse the judicial process and that the doctrine of judicial estoppel does not apply to this matter. In support of this contention, Viskase asserts that (a) Viskase lacked the opportunity to deal with its claim against Carbide prior to the claims objection bar date; (b) Viskase did not make any representations to the court as to Carbide's claim or the counterclaim prior to the objection; (c) Viskase reserved the right to timely file objections to proofs of claims, and Viskase merely exercised this right; (d) Viskase was not required to disclose all potential claims against creditors because of the reservation of the right to object; (e) Carbide had notice of the substance of the counterclaim; and (f) the establishment of a claims objection bar date implicitly disclosed the possibility of objections. For the reasons set forth below, the court concludes that the doctrine of judicial estoppel does not bar Viskase from pursuing its counterclaim and request for set-off.

■■■ As discussed above, in order to apply the doctrine of judicial estoppel, the party to be estopped must have intentionally taken a subsequent position inconsistent with a prior position. *See Cassidy*, 892 F.2d at 641. However, the procedural posture of this matter precludes a finding of intentional wrongdoing. The court can only grant a motion for judgment on the pleadings where the movant establishes that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. *See National Fidelity*, 811 F.2d at 358. Here, the parties dispute whether Viskase intentionally concealed the counterclaim for some improper purpose, and thus a material issue of fact exists as to whether Viskase committed an act of intentional self-contradiction. Accordingly, the court cannot grant Carbide's motion for judgment on the pleadings on the basis of judicial estoppel.

**21.** *See, e.g., Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.), Inc.,* 989 F.2d 570 (1st Cir.), cert. denied, —— U.S. ——, 114 S.Ct. 344, 126 L.Ed.2d 309 (1993); *Oneida,* 848 F.2d 414; *Louden v. Federal Land Bank of Louisville (In re Louden),* 106 B.R. 109 (Bankr.E.D.Ky.1989); *Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G. (In re Galerie Des Monnaies of Geneva, Ltd.),* 55 B.R. 253 (Bankr.S.D.N.Y.1985), aff'd, 62 B.R. 224 (S.D.N.Y.1986).

■ Moreover, the court is not convinced that the positions were "inconsistent." As in *Oneida*, we "stop short of finding that ... [Viskase's] prior silence is equivalent to an acknowledgment that it did not have a claim against [Carbide]." *Oneida*, 848 F.2d at 419.[22] The effect is that, without the silence as to the existence of a potential cause of action being viewed as a debtor's "position" *per se*, the mere act of asserting that cause of action is not clearly inconsistent with a prior position because there is no prior position. *See Cassidy*, 892 F.2d at 641 (the subsequent position must be "clearly inconsistent"). The court does agree that Viskase, by scheduling Carbide's unsecured claims as undisputed, took the position that such claims were undisputed. However, unlike in *Oneida*, here the counterclaim does not speak "to a position clearly contrary to its Chapter 11 treatment of [Carbide's] claim as undisputed." *Oneida*, 848 F.2d at 419. In *Oneida*, the debtor sued the very bank with whom it had worked out a court-approved settlement to secure confirmation of the debtor's plan. The debtor's post-confirmation complaint alleged that the bank's breach of the lending agreements was the direct and proximate cause of the debtor's bankruptcy filing. *Id.* at 420. The court noted that in order for the debtor to prevail, it had to show that the bank deviated from the contractual agreement, which would necessarily "call into question any rights which the bank could assert as a creditor of Oneida for obligations accruing under the lending agreements." *Id.*

■ Unlike in *Oneida*, Viskase's counterclaim does not assert a position contrary to the listing of the claim as undisputed. The counterclaim relates to reimbursement for environmental pollution cleanup expenses under an indemnity clause in the Sales Agreement and pursuant to federal law. In contrast, Carbide's claim is for goods sold and delivered on open account, and has nothing to do with the Sales Agreement or the environmental issues. The assertion of Viskase's counterclaim does not contradict the assertion of Carbide's claim because the two are wholly separate and distinct. Here, it is not necessary to disprove one in order to prove the other, as both the claim and the counterclaim can be proved independent of each other. Therefore, under the facts and circumstances of this matter, Viskase has not assumed a position clearly inconsistent with the position assumed in the schedules by asserting the counterclaim.

■ Had Viskase affirmatively stated to this court, through a hearing, a pleading, or even the Plan, that it did not have a cause of action against Carbide or that it did not have any potential cause of action, thereby implying that it had investigated such things to no avail, and then brought this counterclaim later, this court might be inclined to invoke judicial estoppel to prevent such a maneuver. *See Air One, Inc. v. Wing On Bank, Ltd. (In re Air One, Inc.)*, 75 B.R. 998, 1002 (Bankr.E.D.Mo.1987). But the court has not been directed to any such statement or representation by Viskase. To the contrary, not only does it appear that Viskase did not make any such statement, but Viskase actually put Carbide and the other creditors on notice that objections, so long as timely, may be filed. This was accomplished through the Plan. First, the Plan vests Viskase with, *inter alia*, "all causes of action of any kind whatsoever not otherwise released pursuant to the terms of this Plan...." Plan at § 8.03. This put Carbide on notice that Viskase may at some point pursue an action against Carbide or some other creditor. Second, this court has retained jurisdiction post-confirmation "(a) to determine any Disputed Claims, ... (c) to resolve controversies and disputes regarding interpretation and implementation of the Plan, ... (f) to determine any and all applications, Claims, adversary proceedings[,] and contested or litigated matters pending on the Effective Date, [and] (g) to allow, disallow, estimate, liquidate[,] or determine any Claim against the Debtors...." Plan at § 8.04. By this retention of jurisdiction, the creditors were on notice as to the possibility of such actions

---

22. *But cf. Louden*, 106 B.R. at 112 ("An estoppel may arise when a party remains silent under circumstances where there exists a duty to make factual disclosures;" the failure to schedule the cause of action in the face of the statutory duty to disclose coupled with the subsequent prosecution of the same cause of action "places them in a posture of fundamental inconsistency").

**826**

being brought before this court. *Accord Air One,* 75 B.R. at 1002 ("by retaining jurisdiction to hear preferences in the Plan, creditors were on notice as to their possibility"). Therefore, for the reasons set forth above, the court concludes that Viskase is not judicially estopped from asserting its counterclaim and request for set-off against Carbide post-confirmation notwithstanding the lack of disclosure.

### E. Set-off Under State Law

█ Carbide asserts that 11 U.S.C. § 558 applies to set-off by a debtor, that state law applies thereto, and that, under Illinois law, Viskase is not entitled to set-off because the debts are not mutual, mature, and liquidated.[23] Although Viskase agrees with the first two contentions, Viskase strongly disagrees with the third, as Viskase maintains that the debts are mutual, mature, and liquidated. The court need not resolve this issue at this time. To do so would be premature in that the merits of the counterclaim have not yet been adjudicated. This issue will be more properly before the court once the merits have been addressed.

### VI. CONCLUSION

For the reasons set forth above, the court will, by separate order, (i) deny Viskase's motion to strike; (ii) deny Viskase's alternative motion for oral argument; (iii) deny Carbide's motion for judgment on the pleadings; and (iv) grant in part Carbide's motion for payment to the extent of $494,421.95 and deny Carbide's motion for payment as to $355,477, which represents the balance of Carbide's Claim No. 598.

---

**23.** Assuming without deciding that state law applies, Illinois law is the applicable law. Neither party has raised a conflict of laws or choice of law issue or objection. Moreover, wherever the parties do refer to state law, it is the substantive law of Illinois. In the absence of a choice of law objection, the Court will apply the substantive law of Illinois to those issues governed by non-bankruptcy law. *See Wood v. Mid–Valley, Inc.,* 942 F.2d 425, 426 (7th Cir.1991) ("The operative rule is that when neither party raises a conflict of law issue [where the federal court must apply state law], the federal court simply applies the law of the state in which the federal court sits"); *accord, Employers Ins. of Wausau v. Bodi–Wachs Aviation Ins. Agency, Inc.,* 39 F.3d 138, 141 n. 2 (7th Cir.1994); *Johnson v. Gudmundsson,* 35 F.3d 1104, 1113 n. 6 (7th Cir.1994); *Almar Communications, Ltd. v. Telesphere Communications, Inc. (In re Telesphere Communications, Inc.),* 167 B.R. 495, 502 n. 4 (Bankr.N.D.Ill.1994).