**WESTLAND OIL DEVELOPMENT CORPORATION, Plaintiff,**

v.

**MCORP MANAGEMENT SOLUTIONS, INC., Defendant and Third-party Plaintiff,**

v.

**The FEDERAL DEPOSIT INSURANCE CORPORATION, et al., Third-party Defendants.**

**Civ. A. No. H–91–1608.**

United States District Court,
S.D. Texas.

Aug. 4, 1993.

Joseph S. Cohen, Hirsch & Westheimer, Robert David Daniel, Daniel & Lezar, Houston, TX, for FDIC.

Jack N. Price, Austin, TX, Thad Heartfield, Beaumont, TX, for Westland Oil Development Corp.

James E. Babcock, Babcock & Henderson, Houston, TX, for MCorp Management.

### OPINION ON BANKRUPTCY FINALITY

HUGHES, District Judge.

1. *Introduction.*

Westland Oil Developing Corporation filed for bankruptcy under chapter 11 in October 1987. By November, the creditors confirmed the plan. Westland is now suing MCorp Management Solutions, Inc. (MSI) for fraud and breach of contract based on MSI's repudiation of an oral contract. Because Westland did not adequately disclose it as an asset in its bankruptcy, preclusion bars this claim.

### 2. *Background.*

Westland Oil Development Corporation is an oil exploring company. MCorp Management Solutions, Inc., is in dissolution. Between October 30, 1987, and January 24, 1990, MSI was a wholly owned subsidiary of MCorp Management, Inc., which was a wholly owned subsidiary of MCorp Financial, Inc., which was a wholly owned subsidiary of MCorp, Inc. The Federal Deposit Insurance Corporation is the receiver for MBank–Houston, which was a subsidiary of MCorp Financial before the bank was closed by the FDIC.

In May 1987, Westland owed MBank Houston over $17 million on two promissory notes. After defaulting on the notes, Westland met with three MBank officers and tried, but failed, to restructure the notes. Westland bases its claim on this failed attempt. Westland contends that they reached an oral agreement on October 2, 1987, but that MBank officers changed the terms of the agreement on October 6th, repudiating the October 2nd agreement.

On October 6, 1987, Westland filed for bankruptcy under chapter 11. Throughout the proceedings, Westland acted as a debtor in possession. The creditors confirmed the plan for Westland on November 3, 1987.

After Westland filed for bankruptcy, MBank transferred Westland's loans to MSI. Even though MSI did not exist until after the start of the bankruptcy, Westland contends that, at the time of the agreement and the repudiation, MSI was an undisclosed principal in the transaction and the beneficial owner of Westland's MBank debt. Because the MBank officers became MSI officers, Westland asserts that the MBank officers acted at the direction of MSI. In the third party action, MSI sued the FDIC for third-party liability, contribution, and indemnity. For purposes of this case, whether Westland was dealing with MSI or MBank is immaterial. Westland's claim is barred by res judicata either way as both MSI and MBank were parties to the bankruptcy and the claim arises from the October 2nd attempt to restructure the MBank notes, no matter which party was

actually negotiating. For simplicity, MSI will be described as the negotiating party on October 2, 1987.

Westland is suing MSI for successor liability, breach of contract, and tortious interference. They assert that MSI never had any intention of keeping the October 2nd oral agreement and that MSI's repudiation caused them to lose other financing sources, which forced them into bankruptcy.

### 3. *Debtor's Duty of Disclosure.*

■ Before a debtor submits a plan to the creditors for approval, the debtor must give the creditors a disclosure statement containing "adequate information." 11 U.S.C.S. § 1125(a) (1987). The code vaguely defines that as information necessary for creditors to make an informed judgment about the plan. 11 U.S.C.S. § 1125(a)(1). Over the years, the courts have articulated specifics that tailored the scope of information the debtor must disclose to the creditors. To provide adequate information, a disclosure statement should include:

A. The events which led to the filing of chapter 11;

B. A description of the available assets and their value;

C. The scheduled claims;

D. The estimated return to creditors under a chapter 7 liquidation; and

E. Litigation likely to arise in a non-bankruptcy context.

*In re Metrocraft Pub. Services, Inc.*, 39 B.R. 567 (Bankr.N.D.Ga.1984).

■ Disclosure is the "pivotal" concept in chapter 11 reorganization. 5 Collier on Bankruptcy, ¶ 1125.03 (15th ed. 1992). The code requires disclosure to protect creditors from a debtor who may try to hide assets. *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 422 (3rd Cir.) (Stapleton, J., dissenting), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). Additionally, disclosure of claims maximizes court efficiency by short-cutting attempts, like this one, to

litigate what should have been disposed of more than four years ago.

#### 4. *Westland's Position.*

■ Westland contends that in the plan language and the disclosure statement it disclosed fully the likelihood of the present suit against MSI. Westland relies on these statements:

*Description of Assets and Values*

... Furthermore, the Schedule of Assets does not include any causes of action which Westland retains pursuant to § 8.04 of the plan, as causes of action are difficult to value. Disclosure statement, p. 13, ¶ V.

(§ 8.04 was an error; § 8.03 is the correct section.)

*8.03 Causes of Action*

Westland shall retain and may prosecute any and all causes of action which it may have whether arising prior to or after the Petition Date ... § 8.03 Plan.

In the disclosure statement, Westland represents that it reviewed pre-petition transactions to determine the viability of actions, but that no actions, at that time, would be economically beneficial. The last sentence of the section states: "... Westland will continue its investigation, and no causes of action are being released by the plan."

Westland contends that the general retention clause adequately discloses to MSI and the other creditors the potential of this lawsuit. The plan did not include a settlement or release of a cause of action. Neither MSI, MBank, nor any other creditor asked Westland for more information about the retention clause. Westland also suggests that because MSI did not negotiate in good faith with Westland, MSI should have known that Westland would later sue them for their evil conduct.

#### 5. *What Westland Did Not Disclose.*

During the bankruptcy proceeding, Westland filed its Statement of Financial Affairs and Schedule of Assets. While the notes were listed as a liability, this claim against MSI was not scheduled as an asset nor as a set-off to the notes. Westland never amended the schedules to include this claim. Even when MSI moved for relief from the stay, Westland's response did not mention claims against MSI.

Westland was aware of its claim against MSI before it filed for bankruptcy. It is Westland's belief that the actions of the MSI bankers forced them into bankruptcy. Westland knew about the claim, was mad about it, and hid it within the murky language of the general retention clause.

■ The institution of bankruptcy exists to give debtors a fresh start, not to allow debtors to seek revenge against creditors who were difficult in earlier business dealings. General retention clauses are not convenient hiding places for debtors. While a debtor is not forced to abandon claims before they are known, a debtor must disclose those claims that are likely. *Metrocraft*, 39 B.R. 567. A claim with potential is a potential asset. The creditors have a right to know what the debtor's assets are even though the potential may be contingent, dependent, or conditional. While Westland did not have to give an exact dollar value for the claim, it was obliged to give an estimate. Rather than make a good faith attempt at disclosure, Westland chose not to estimate a value for this claim on the ground that "causes of action are difficult to value." The code requires adequate disclosure, not selective disclosure. Because Westland failed to disclose its claim against MSI, it will be barred.

#### 6. *Res Judicata.*

■ When there is a final judgment on the merits, the same parties are barred from bringing the same claim in a later suit. *Matter of Howe*, 913 F.2d 1138, 1143–44 (5th Cir.1990.) The bankruptcy court's confirmation of Westland's plan has the effect of a district court's final judgment. *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938). Two suits involve the same claim if they arise out of the same transaction. *Howe*, 913 F.2d at 1144; *see* Restatement (Second) of Judgments § 24, comment (a) (1982). Within

**104**

each litigated transaction, the plaintiff must raise all remedial rights or claims against the defendant or be precluded in the future. *Sure–Snap v. State Street Bank and Trust Co.*, 948 F.2d 869, 873–875 (2d Cir.1991); *Nilsen v. City of Moss Point*, 701 F.2d 556, 560, n. 4 (5th Cir.1983). If a claim was raised or could have been raised in the prior action, it will be barred. *Stoll*, 305 U.S. 165, 59 S.Ct. 134; *Howe*, 913 F.2d at 1144; *Miller v. Meinhard–Commercial Corp.*, 462 F.2d 358 (5th Cir.1972). A confirmed plan is binding on all parties. 11 U.S.C.S. § 1141(a).

Westland contends that because this suit addresses a different claim, the bankruptcy court did not reach a final judgment on the merits for the purposes of res judicata. During the bankruptcy, MSI's claim was for the amount of the debt and validity of the liens under two 1985 loan agreements; Westland asserts that this is unrelated to the 1987 oral contract to restructure those debts.

The breadth of the transactional test demands that parties raise all related claims. This is especially important in the context of plan confirmation since the creditors need and deserve all available information so they can intelligently vote on the plan. The 1987 oral agreement was to restructure the 1985 indebtedness by exchanging property for debt. If Westland were able to enforce this agreement during the bankruptcy, it would have off-set their pre-petition debt. The oral agreement would have changed the original terms of the loan, and it would have been a defense to MSI's deficiency claim. The 1987 oral contract is not only related to the 1985 loan agreements, it arises from them. There is clearly a "nucleus of operatives facts" between the 1985 and 1987 events. *Howe*, 913 F.2d at 1144.

The plan disposed of the 1985 loan agreement. Westland's current claim is the same claim that was litigated earlier in bankruptcy. Because there was a final judgment on the merits of the claim that Westland now raises, this suit is barred.

*7. Conclusion.*

The finality of judgments is one of its most valued traits; this is no less true of a bankruptcy confirmation than of common law judgments. Debtors have a second chance and creditors know how much of their loss they will recover. The creditors rely on the information the debtor provides before they vote to confirm the plan. If a debtor buries known assets, like current causes of action, in general retention clauses, he essentially hides the asset and its value. It is not the duty of the creditor to ferret out these hidden assets. The code requires that the debtor adequately, not selectively, disclose fully and precisely all information a creditor would reasonably want before voting on the plan. Westland failed to meet this duty. Westland cannot litigate a claim now that it should have raised in the bankruptcy proceedings. Westland's claims will be barred.