Filed 7/24/13  Campbell v. Bank of America CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| FRANKLYN CAMPBELL et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>BANK OF AMERICA, etc., et al.,<br><br>Defendants and Respondents. | B242024<br><br>(Los Angeles County<br>Super. Ct. No. KC061776) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Salvatore T. Sirna, Judge.  Affirmed.

Law Office of Stephen R. Golden and Stephen R. Golden for Plaintiffs and Appellants.

McGuireWoods, Leslie M. Werlin and Lee G. Hammer for Defendants and Respondents.

Plaintiffs and appellants Franklyn Campbell and Johnetta Campbell (the Campbells) appeal a judgment of dismissal following the sustaining without leave of demurrers interposed by defendants and respondents Bank of America, N.A. (Bank) and ReconTrust Company, N.A. (ReconTrust) (collectively, Bank or defendants) to the Campbells' second amended complaint.

The Campbells filed a Chapter 7 bankruptcy petition in which they failed to disclose their potential lender liability claims against the Bank.[1]  A debtor's failure to disclose a potential lender liability lawsuit in a bankruptcy proceeding precludes the debtor from later litigating the claim.  (*Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1609 (*Hamilton*).)  Therefore, the trial court properly sustained the demurrers without leave to amend.  Accordingly, the judgment of dismissal is affirmed.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Pleadings*.

The Campbells commenced this action on July 29, 2011.  On February 6, 2012, they filed the operative pleading, a verified second amended complaint, against the Bank and ReconTrust, setting forth the following causes of action:  (1) unlawful foreclosure; (2) declaratory relief; (3) quiet title; (4) violation of the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.); (5) unfair and deceptive business acts; (6) breach of fiduciary duty; (7) fraud; (8) deceit; (9) rescission; and (10) violation of section 131(g) of the federal Truth in Lending Act (TILA).  The complaint pled in pertinent part:

On April 9, 2001, the Campbells refinanced their home loan, obtaining a new loan from the Bank in the sum of $1,280,000.  The note was secured by a first deed of trust on their residential real property on Steeplechase Lane in Diamond Bar, California.  The loan was underwritten without proper due diligence by the lender, as evidenced by the fact they qualified the borrower on the basis of interest only payments and not the fully amortized loan amount.  Further, the Bank failed to explain to the Campbells the terms of

---

[1]     The bankruptcy court records were before the trial court by way of judicial notice.

2

the loan and did not advise them of the inherent volatility of their adjustable rate mortgage loan. The Bank engaged in "predatory tactics," placed the Campbells "in harm's way," put the Campbells "in a loan for which they had trouble making the payments on from almost the beginning," and did so to maximize the Bank's profits "with no concern for the [Campbells'] financial position or livelihood."

The Campbells attempted to obtain a loan modification. On September 28, 2009, they attended a seminar at the L.A. Convention Center, in order to save their home from foreclosure. At the seminar, they met with a representative of the Bank. The representative advised the Campbells they qualified for a loan modification and if they were to complete the application, a loan modification would be forthcoming. The Campbells submitted their application and the Bank offered them a loan modification agreement, which they accepted and sent back on November 12, 2009.

However, the following month, when the new payment was about to begin, the Bank sent the Campbells a statement without reference to the new payment amount. The Campbells called the Bank and were told the modification had not been approved, asserting that the Campbells had rejected the loan modification.

On May 13, 2010, ReconTrust, as agent for the Bank, recorded a notice of default and election to sell under deed of trust.[2]

On June 2, 2010, the Campbells filed a second application for a loan modification.

On August 24, 2010, while the second application for a loan modification was pending, the Campbells learned foreclosure was scheduled for September 13, 2010. The Campbells asked the Bank to stop the foreclosure while it reviewed the modification request. The Bank refused. Thus, the Bank engaged in unlawful "dual tracking."

---

[2]     According to the appellants' opening brief, the foreclosure still has not occurred.

3

On September 12, 2010, with foreclosure imminent, the Campbells filed for bankruptcy protection.[3]

Due to the pendency of the bankruptcy proceeding, the Bank denied the Campbells' second application for a loan modification.

On March 3, 2011, the Campbells retained the Law Office of Stephen Golden to pursue their legal rights against the Bank. On March 18, 2011, Tom Carrozzo, the law office negotiator, contacted the Bank and was notified by one Alma that the foreclosure "sale date had been cancelled until the bankruptcy had been discharged."

The complaint continues: "44. Plaintiffs are now out of bankruptcy. [¶] 45. [The Bank] is set to foreclose upon Plaintiffs' property."

Based on these allegations, the second amended complaint set forth the 10 causes of action enumerated above. The Campbells sought compensatory and punitive damages, and to quiet title to the property, with a declaration that the Bank and ReconTrust had "no right, title, estate, lien, or interest in the property . . . ."

2. *Demurrer.*

The Bank and ReconTrust demurred to the second amended complaint in its entirety. The defendants contended the Campbells were barred from pursuing any of the claims averred in the second amended complaint "because they failed to disclose these causes of action in their personal property schedules when they filed for bankruptcy in 2010." The defendants requested judicial notice of the Campbells' bankruptcy schedules and amended bankruptcy schedules, copies of which were attached to the defendants' papers.[4]

---

[3]    The record reflects that in the bankruptcy proceeding, the Campbells were represented by Attorney Norman J. Kreisman, who prepared and filed the bankruptcy petition and schedules.

[4]    The bankruptcy schedules showed, inter alia: The Campbells' residence was encumbered by a $1,228,000 first trust deed to the Bank, a $253,000 second trust deed to Wells Fargo Bank, and a $188,700 third trust deed to Asian Pacific Revolving Loan, for a total of $1,669,700. Their occupations were "retired" and "housewife," with total monthly income of $9,910, consisting of social security and pension or retirement

Defendants further argued that leaving aside the Campbells' nondisclosure of their potential lender liability claims in their bankruptcy petition, each cause of action suffered from other infirmities and could not be amended to state a cause of action.

3. *The Campbells' opposition papers*.

On April 16, 2012, three days before the hearing on the demurrer, the Campbells filed an untimely opposition memorandum. The Campbells admitted they were served with the demurrer on March 21, 2012, but they did not oppose the demurrer earlier because the Bank allegedly had failed to file the demurrer with the court, and the court clerk had advised them the demurrer was not on calendar.

As for the merits, the Campbells argued they adequately pled each and every cause of action, but that if the pleading were infirm, the trial court should grant them further leave to amend. The Campbells did not respond to the Bank's primary argument, i.e., that the Campbells' failure to disclose their potential lender liability claims to the bankruptcy court barred the Campbells from pursuing the instant action.

4. *Trial court's ruling*.

On April 19, 2012, the matter came on for hearing. Following arguments by counsel, the trial court sustained the defendants' demurrer to the second amended complaint without leave to amend, stating: "I think this is basically a systemic problem, something that can't be fixed with further amendment."

The Campbells filed a timely notice of appeal from the judgment of dismissal.

**CONTENTIONS**

The Campbells contend: the trial court abused its discretion in sustaining the demurrer to each cause of action without leave to amend; the judgment should be reversed to allow them to maintain the claims falling within the provisions of the recently enacted Homeowner's Bill of Rights (Civ. Code, § 2924.18, eff. January 1,

income. Their personal property schedule, Schedule B, showed: $2,500 in a checking account; $4,000 in household goods; $400 in wearing apparel; $300 in model trains; and four automobiles with a total value of $9,000. With respect to Schedule B's category of "*contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims*," the Campbells stated "*none*." (Italics added.)

5

2013); reversal is required because the verified second amended complaint states numerous causes of action under many legal theories as against defendants; and the trial court abused its discretion in denying leave to amend.

## DISCUSSION

1. *Standard of appellate review.*

In determining whether a plaintiff has properly stated a claim for relief, "our standard of review is clear:  ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  *We also consider matters which may be judicially noticed.*"  [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff.'  [Citations.]"  (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126, italics added.)  Our review is de novo.  (*Ibid.*)

2. *The Campbells' failure to disclose their potential lender liability claims in the bankruptcy court proceeding is fatal to their claims herein.*

a. *Debtor's duty of disclosure.*

It is established "one seeking benefits under bankruptcy law must 'satisfy a companion duty to schedule, for the benefit of creditors, all his interests and property rights.'  (*Oneida Motor Freight* [*Inc. v. United Jersey Bank* (3d Cir. 1988)] 848 F.2d [414,] 416.)  'The result of a failure to disclose [any litigation likely to arise in a nonbankruptcy context] triggers application of the doctrine of equitable estoppel, operating against a subsequent attempt to prosecute the actions.'  (*Id*. at p. 417.)"  (*Hamilton, supra*, 195 Cal.App.4th at p. 1609.)  Thus, in *Oneida*, "the court applied doctrines of equitable and judicial estoppel to find a debtor's failure to disclose a lender

6

liability claim in chapter 11 bankruptcy proceedings precluded the debtor from later litigating the claim." (*Hamilton, supra,* at p. 1609.) The rule is based "upon the well-established requirement that a debtor seeking the benefits of bankruptcy must fulfill the companion duty of fully disclosing and scheduling all property interests and rights so that the bankruptcy court and creditors can make an informed decision about the debtor's proposed reorganization plan.' [Fn. omitted.] [Citation.]" (*Billmeyer v. Plaza Bank of Commerce* (1995) 42 Cal.App.4th 1086, 1091-1092.)

b. *The Campbells had sufficient knowledge of the pertinent facts before they filed for bankruptcy protection.*

The Campbells contend their omission of the potential lender liability claims from their bankruptcy schedules does not bar the instant action because the second amended complaint reflects that it was only on or about March 3, 2011, when they contacted Golden's law office, that they learned of their legal rights against the Bank.

"Similar assertions have been [repeatedly] rejected . . . . ([See, e.g.,] *Hay v. First Interstate Bank of Kalispell, N.A.,* [(9th Cir. 1992)] 978 F.2d [555,] 557 ['We recognize that *all* facts were not known to Desert Mountain at that time, but enough was known to require notification of the existence of the asset to the bankruptcy court.']; *Eubanks v. F.D.I.C.,* [(5th Cir. 1992)] 977 F.2d [166,] 174; *Matter of Howe* [(5th Cir. 1990)] 913 F.2d [1138,] 1147.) The record establishes that plaintiffs were fully aware of the operative facts surrounding their claims against the Bank and Burk *and at best it could be said that they may not have been aware of the legal significance of those facts.* However, that is not an excuse for failing to identify the claim in the earlier proceedings. (*Ibid.*)" (*Conrad v. Bank of America* (1996) 45 Cal.App.4th 133, 151-152, certain italics added.)

Likewise, "[i]n *Westland Oil Dev. Corp. v. MCorp Management Solutions* (S.D.Tex.1993) 157 B.R. 100, the debtor listed two unpaid loans as liabilities but did not list as an asset its claim against the lender for breach of an oral agreement to restructure the loans. Nor did the debtor amend its schedules to include the claim. The debtor's reorganization plan was confirmed. The debtor subsequently filed suit against the lender, alleging breach of the oral agreement. The lender sought to bar the action. [¶] In ruling

7

for the lender, the court rejected the debtor's contention that it did not have to list the claim, stating: '[The debtor] was aware of its claim against [the lender] before it filed for bankruptcy. *It is [the debtor's] belief that the actions of the [lender's] bankers forced [it] into bankruptcy. [The debtor] knew about the claim [and] was mad about it . . . .* [¶] . . . A claim with potential is a potential asset. The creditors have a right to know what the debtor's assets are even though the potential may be contingent, dependent, or conditional. . . . The code requires adequate disclosure, not selective disclosure.' (*Westland Oil Dev. Corp. v. MCorp Management Solutions, supra,* 157 B.R. at p. 103.)" (*Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 135 (*Gottlieb*).)

Here, the second amended complaint alleges the Campbells twice sought a loan modification, to no avail. Then, with foreclosure imminent on September 13, 2010, they "were forced to file for Bankruptcy protection on or about September 12, 2010." Thus, the pleadings establish the Campbells were aware of the operative facts relating to their lender liability claims before they sought bankruptcy protection. Accordingly, they were obligated to disclose said potential claims in their bankruptcy filings. Their nondisclosure in the bankruptcy court is fatal to their lender liability claims in the superior court.[5]

c. *The Campbells' attempt to bring themselves within the* <u>Gottlieb</u> *exception is misplaced; the bankruptcy court records indicate the bankruptcy proceeding concluded in a discharge, not in a dismissal.*

*Gottlieb* "found judicial estoppel did not bar plaintiff's claims against a real estate lender, even though plaintiff did not disclose its claim against the lender in the chapter 11 bankruptcy case, because the debtor 'did not submit a reorganization plan, creditors did not accept a plan, and the bankruptcy court did not review or confirm a plan.' *Instead,*

---

[5] The Campbells also seek to attribute their nondisclosure in the bankruptcy court to the fact that they filed for bankruptcy protection in propria persona. This argument is belied by the record. The bankruptcy court records, contained in the appellant's appendix, indicate the Campbells retained and paid Attorney Kreisman $2,000 to prepare and file their Chapter 7 bankruptcy petition and schedules.

8

*the chapter 11 case 'was dismissed without a determination as to any purported debts.'* (*Gottlieb, supra,* 141 Cal.App.4th at pp. 137-138, 141.)  In *Gottlieb*, the debtor's nondisclosure 'did not affect any unpaid creditor's ability to pursue [the debtor] for the full amount due . . . .' (*Id*. at p. 142.)" (*Hamilton, supra*, 195 Cal.App.4th at p. 1613, italics added.)

In the instant case, the second amended complaint merely alleges without elaboration at paragraph 44: "Plaintiffs are now out of bankruptcy."  Based thereon, the Campbells contend there is no evidence in the instant case as to how the bankruptcy case ended, and without a showing as to how the bankruptcy case was resolved, they cannot be judicially estopped on demurrer from pursing their lender liability claims.

The argument is unavailing.  This court takes judicial notice of the bankruptcy court records, which show that on January 24, 2011, the Campbells' Chapter 7 bankruptcy was *discharged*.  (Evid. Code, § 452, subd. (d), § 459.)

Because the Campbells' bankruptcy ended in a discharge of indebtedness, not in a dismissal, their reliance on *Gottlieb* is misplaced.

d. *Trial court properly sustained demurrers without leave to amend.*

We conclude the Campbells' failure to disclose their potential lender liability claims in their bankruptcy schedule precludes them from prosecuting those claims post-bankruptcy.  Further, given these circumstances, the Campbells are incapable of amending their pleadings to state a cause of action.  Therefore, the trial court properly sustained the demurrers without leave to amend.

3. *Remaining arguments without merit.*

a. *Trial court properly proceeded with the hearing on the demurrer to the second amended complaint.*

The Campbells contend the trial court erred in hearing and ruling on the demurrer because they believed the Bank's demurrer had not been "filed" and was not properly before the court.  The Campbells assert that although they were served with a copy of the demurrer, they believed the demurrer was not actually filed, and they were advised by the court clerk that the demurrer was not on calendar.  Nonetheless, "out of an abundance of

9

caution," they filed an opposition to the demurrer, but the opposition was untimely and was not considered by the court. On that basis, they request reversal and remand for further proceedings.

These arguments are unavailing. As a preliminary matter, the record reflects the Campbells failed to file opposition to the earlier demurrers, i.e., the demurrer to the original complaint and the demurrer to the first amended complaint. Therefore, their procedural default with respect to the demurrer to the second amended complaint is consistent with their lack of any response to the earlier demurrers.

Further, and in any event, the Campbells' counsel ultimately did file an opposition to the demurrer to the second amended complaint and did appear at the hearing to oppose the demurrer. Also, the Campbells have extensively briefed the sufficiency of the pleadings on appeal, in a 47-page opening brief as well as in an appellant's reply brief. Moreover, the sufficiency of the pleadings is a question of law, which this court reviews de novo. Therefore, irrespective of the Campbells' belated opposition papers below, they have had ample opportunity to make their case as to why their complaint is well pled. Accordingly, their procedural arguments with respect to the hearing on the demurrer are unavailing.

b. *Trial court properly granted Bank's request for judicial notice of bankruptcy court records.*

The Campbells contend the trial court erred in taking judicial notice of the bankruptcy court records proffered by the Bank, because there is no indication in the superior court docket that the Bank filed a request for judicial notice, and further, the service copy does not reflect the filing of "certified" copies of the documents from the bankruptcy court.

The arguments are meritless. The Bank's moving papers below asserted the attached documents were true and correct copies of the Campbell's bankruptcy court schedules, and the Campbells do no dispute that the bankruptcy court documents are what they purport to be. (*Hamilton, supra,* 195 Cal.App.4th at pp. 1608-1609, fn. 3.) Further, the Bank requested judicial notice not for the truth of the matters asserted in the

10

bankruptcy schedules, but rather for the fact that the documents were filed " 'and that they say what they say.' " (*Ibid*.)  We see no error.  (*Ibid*.)

c.  *The impact of newly enacted Civil Code section 2924.18.*

Lastly, the Campbells seek reversal to enable them to amend their pleading to state a cause of action pursuant to newly enacted Civil Code section 2924.18, which became effective January 1, 2013, during the pendency of this appeal.  The statute provides in pertinent part at subdivision (a)(1):  "If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent *shall not record a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan modification application is pending*, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested loan modification."  (Civ. Code, § 2924.18, subd. (a)(1), italics added.)

As the Campbells argue, the new statute prohibits "*dual tracking*," that is to say, a lender may not record "a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan modification application is pending . . . ."  (Civ. Code, § 2924.18, subd. (a)(1).)

Even assuming the Legislature intended this enactment to be given retroactive effect, it would not change the result in the instant case.  The second amended complaint specifically pled at paragraph 33:  "Plaintiffs asked Defendant to stop the foreclosure while reviewing Plaintiffs' loan request.  Defendant refused to postpone the foreclosure *This dual tracking is one of the major violations that B of A was found guilty of by the Office of Thrift Supervision* [on April 13, 2011]."

Thus, one year before the enactment of Civil Code section 2924.18, the Campbells pled the Bank had engaged in unlawful "dual tracking" by proceeding with foreclosure proceedings at the same time as it was processing the Campbells' loan modification request.  Further, the second amended complaint alleged it was the Bank's refusal to "stop the foreclosure while reviewing Plaintiffs' loan request" that "forced" the Campbells to file for bankruptcy protection on September 12, 2010.

11

In other words, the operative facts relating to the alleged dual tracking arose prior to the commencement of the bankruptcy proceeding. Accordingly, as discussed above, the Campbells' failure to disclose the potential lender liability claim in their bankruptcy filings is fatal to their prosecuting an action in the superior court based on unlawful dual tracking.

## DISPOSITION

The judgment of dismissal is affirmed. Defendants shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KLEIN, P. J.


We concur:


CROSKEY, J.



ALDRICH, J.


12